Our fourth case for today is Allin v. City of Springfield, Mr. Rahn. May it please the court, counsel. It's my privilege in this case to represent Sgt. Jeff Barr and the City of Springfield. When I read this court's opinion in Zappa v. Gonzalez this past April as I was briefing this case, I literally laughed out loud. The facts seemed uncannily familiar and the issue in the case was virtually identical. Who owns this motorcycle? The second question, of course, was what are we doing in federal court? Ultimately, I think this case, like Zappa, will turn on the question of whether a simple property dispute is really a federal civil rights act. If I can summarize the facts very briefly, the plaintiff in this case was in a relationship with co-defendant Patricia Baskett. She's not part of this appeal. I think we know the facts. We're on a qualified immunity appeal, right? Yes. It's a collateral order appeal under Mitchell v. Forsyth, etc. The district court judge found the facts to be somewhat different from those that existed in the Zappa case, not that he had that in front of him, but if you think about it. He summarizes around page 11 of his opinion why he thinks that there are enough disputed issues of fact here that it's inappropriate to grant qualified immunity in the strong sense of the term, in the sense that would avoid trial altogether. It certainly doesn't mean, you know, Sergeant Barr is either going to win or lose at the end. It just means is there qualified immunity? Unlike in Zappa, there is evidence that suggests that there's maybe some prior arrangement to get the motorcycle from Mr. Allen via Baskett and McClure and some of these other actors over to Sergeant Barr and his wife. The district judge says there's a dispute over the ownership of the motorcycle, but there's some evidence to indicate that Barr had actual knowledge that it really wasn't Baskett's. That's different from Zappa as well. She had a plan to sell the motorcycle. Baskett did for three months. Baskett's acquainted with Barr's wife, so opportunity to communicate all of this through the wife to Barr. Barr doesn't just go to the residence because he's on the beat. He goes there because his wife asks him to and so on. I mean, you know what all of this is. But I guess I have the sense. If the district judge has a pretty decent handle on the facts of the case as it's unfolding, why isn't it necessary under Johnson v. Jones for us to say these facts are going to have to get sorted out, let the case go forward? Because those facts don't matter. And the reason they don't matter is that state action in this case was a police officer on the scene deciding who gets property. But what if the police officer had a preexisting agreement with somebody to make sure? Wren v. United States, Your Honor. That's not. The ulterior motive is irrelevant for a federal civil rights case. It may state a conversion case. It may state a conspiracy case. We're talking about federal civil rights case. And do police officers have the right to rely on a title certificate? No. Well, I mean, I know that's your theory of the case for sure. You made that very clear. But the fact is if there's actual knowledge. I mean, you would agree, I assume, maybe you wouldn't, that if a police officer goes to somebody's house, you know, Smith's house, the police officer can't just take, you know, a car or a motorcycle or a, you know, TV or whatever he wants from the house. That's correct. Right. So police officers under the Fourth Amendment don't have the right to just seize stuff without the right reason for that. But in this case, there was no seizure. Well, the theory is, I suppose, that he arranges. He merely said, I'm not going to stop you. He comes, he says, I'm not going to stop you. Several hours later, it gets loaded onto a truck or something. Now, I mean, we argued at the district court level that the only evidence that there was a preexisting knowledge between the two is Mrs. Cunningham, who said, don't trust my memory. I don't trust it myself. Two years later. So, but that's not what we're here. What we're here is whether or not the ulterior motive of an officer undermines his ability to rely on a title certificate. And I would suggest to you that the Supreme Court has categorically said, no, we don't care if an officer is relying on, you know, the case that was raised was racial profiling. If there is probable cause, the officer's official actions are okay. In this case, the only official action was, Mrs. Baskett, you have title, I'm not going to stop her from taking it. That's the only official, that's the only nexus that we have a federal case here. In this case, is there, I know this gets into the underlying facts, was there something mentally deficient with Allen? Not that it was. Because he went, for whatever reason, he says he's dying, so he signs. He was an alcoholic at the time. Okay, well, there's a problem, because he basically signed an open title. Yes, he was an alcoholic. Which is basically like writing a check.  With the signature on it with nobody in the. Correct. But the trouble is, in signing a check, like I just described, her name is in it. She may have put it there, Baskett. Correct. But the title that he had shows this motorcycle in Baskett's name. Yes, it had been reissued. There was no question on the title certificate. Yeah, so she's the one, and whatever is, she's taking care of him, and whatever the relationship that dissipated. That is certainly. Those are all things that drift into it. That is certainly relevant to a conversion case. Yeah, but what you seem to be saying is that just the mere fact that the officer, I guess, can he check that really quickly? I guess he could. Did he do that on the line, or how did he find out that the title was valid? Just by looking at it, or did he. It was validly issued, and there's no question that the title certificate was issued. It didn't have Mr. Allen's signature on it at all. So on its face, that was enough for him to declare it, or did he check with somebody else? Well, he also called the legal counsel. Okay, so he says, I've got a title here with her name on it. Can I let her have it? She's got the title, and that's it. Correct. That's what the word was, and that's the end. That's where you draw the line. That's where I draw the line. That's the only incident of state action. So what you're saying is you go in and get all the other details about whether Barr made some kind of a deal, or, you know, then he pays $7,000 or something for the bike, and then turns around and sells it himself for a profit. His purchase was not state action. Okay. Because that's what this is about. Correct. All right. Yes, the defendant's theory on this appeal is that Mr. Barr's purchase of the motorcycle was not state action. The only allegation of state action was his looking at the title and saying, you can have possession of the motorcycle. So once Barr, that's his name, right, the cop, Barr? Sergeant Barr, yes. Once he left, then he basically steps into a different mode, I guess. That is correct. He's just, in effect, a bystander. He didn't declare that the title was valid or get into that debate. He just looked at it and said it's hers unequivocally. Yes, and our argument is that a police officer has the right to do that and has qualified immunity, and based on Wren, we do not look at the subjective motives of a police officer. The district court wanted to see a lot more facts, I guess. Correct. The district court was essentially saying, well, he could have been wrong. What the district court was saying that if he had looked at this and said, I'm sorry, Mrs. Baskett, your name is on the certificate, but he makes a compelling case, I'm going to let him have it, under the district court's theory, Mr. Barr is subject to suit by Mrs. Baskett because he wasn't right. He'd have been fired right on the spot, but go ahead. Yes, he basically required him to make the correct decision or face suit, and that's not what qualified immunity is. In other words, he can't be the judge. Correct. The judge can't be sued because they can be appealed from, but a police officer, according to the district court here, is absolutely liable for suit if he decides wrong. All right. Thank you very much, Mr. Rahn. Mr. Meyer. May it please the court, counsel. My name is Louis Meyer, and I represent Scott Allen, the plaintiff of Pele in this case. So this is the troublesome part about this case. The police officer, even if Illinois law says that a certificate of title isn't dispositive on title, it's pretty good evidence that somebody owns a car or a motorcycle or whatever the thing is, and that's presented to Officer Barr, and the question is, can she take this motorcycle? And why can't he simply rely on state law to sort out whatever remaining disputes there are between Mr. Allen and Ms. Baskett? I mean, the police officer is put in an impossible position if he can't rely on the title. Well, in this case, yes, they can rely on the title, and the state law says that is presumptive, but there's other evidence that he had at this time. The other evidence was not presented at the time, was it? It was. So two days prior to that. No. Let's start. The only issue here is whether or not the officer violated his constitutional rights when he looked at the certificate and said, she's got it. It's whether or not he violated his Fourth Amendment right for the seizure, correct? Yeah. And at the time he did that. That's the state action. The state action is that he said she can take it. What happened before or after has nothing to do with that state action. And that's the state action you're complaining about. The state action. Am I correct? Correct. Okay. So what we're complaining about is that he decided to give Ms. Baskett this motorcycle when he had this prior relationship and was aware on the scene that Mr. Allen reported the title violation. When I was in law school 150 years ago, I studied domestic relations. And the only thing I remember about it is who got the diamond in case the action, the parties parted company. Right. What happened to those glorious days of yore when a male gave a lady a diamond, not a motorcycle? Well, what happened here in this case, and that's what even Sergeant Barr admits, is they do a lot of these when there are these property removals, which is similar to the case of, I believe it's Pepper v. Oak Forest, is where an officer comes to maintain the peace. When someone takes something, if there's a dispute over ownership, not title but ownership, the proper remedy is to go to the civil courts. You leave the property there and you go to a civil court, you have a court order. Do you think the police are able to discern the difference between title and ownership? I do. They have to adjudicate that on the spot. They don't. They leave it for the judge. Sergeant Barr adjudicated it here for his benefit. He made the determination. He was judge and jury that she was a proper owner when it was clear that ownership of this motorcycle was in dispute. So he should have left the scene and let them fight over it. He should have said, this is in dispute. When you come back with a court order, we can enforce a court order. But he allowed her to take it without a court order while the ownership of this motorcycle is in dispute. He didn't supervise the taking. She came back later and drew it off, I guess. She probably could have done any time. I'm not sure of that. She didn't have the keys. Yeah, she didn't have the keys. They had to physically load it onto a truck. Yeah. Sergeant Barr had left at that time, but he made it clear to Mr. Allen, a former police officer, that she gets to take it. This is homeowner's cycle. But you're also relying on the fact that two days earlier, Mr. Allen had reported the bike stolen. Correct. And I think that goes to a totality of the circumstances on the scene that day is the day he had this fight with Ms. Baskett when he kicked her out. She made a statement, I have your motorcycle title. Who had the keys to the motorcycle? He had the keys to the motorcycle. And where was the motorcycle physically? In his garage. When did he report it stolen? Did he tell him that it was in the garage? He never reported the motorcycle stolen because he was in possession of it. Wait, wait. He reported the title stolen? He reported the title stolen. So two days prior, they had a fight where she said, hey, I have the title. I'll give it back to you if you give me $1,000 to move out. He went to check his safe where he signed these titles when he was sick earlier that she told him she signed. This becomes a federal civil rights case. It does when Sergeant Bard comes in as a police officer and uses his power and authority as an officer to order her to take that motorcycle. So that's when he reports it stolen. So what about Mr. Ron's argument about Ren? You're very heavily into his subjective, into the subjective reasons that Sergeant Bard may have had to take the actions he did. But from 10,000 feet up, Sergeant Bard is over there, however he may have gotten there, from a phone call. It's his area. It's within his jurisdiction. And he sees what appears to be a valid title issued by the state of Illinois for this motorcycle. And so he says, hands off. You know, that's enough to allow this to go forward. I mean, yes, maybe state law likes somebody to run off and get a court order for this sort of thing, but federal law doesn't depend on state law. Why isn't that enough to allow him objectively, to allow an objective person to take the action he did? When you go to a reasonable officer and qualify immediately, it's what the officer knew at the time and what was presented to him at that time. And at that time it wasn't simply, hey, I have the title and nothing else. Here it's a different situation. So a reasonable officer who also knows that two days before the physical title has been reported stolen, although not the motorcycle. Correct. And also knew that he was supposed to be there at noon to meet because of this removal of motorcycle. You know, Ren goes to protectual traffic stops. All other kinds. It's been extended to all sorts of protectual actions. Correct. If you have probable cause for anything, the subject, it doesn't matter. Here there was no probable cause. There's a dispute of ownership. The district court found that there's facts of ownership. A lot of times there's a dispute on the facts for probable cause, and the police officer isn't required to keep investigating until he gets down to the bottom of things. The police officer can act on the basis of what seems to be a solid basis for action. Yeah, they can base it on a credible witness. Yeah, why isn't the title a credible witness? Because Sergeant Barr had prior knowledge that she might not have properly gotten that title. Now is that a fact? That's because it was reported stolen two days prior to this removal. I mean, did Barr know that, you say? He did. It was brought up on the scene. Mr. Allen said, hey, guys, I just reported it stolen two days prior, and, in fact, he was at the DMV trying to figure out what happened when they called him to come to his house to open the garage to let out the motorcycle. Was that the first time Barr found out about it when Allen told him that? That's what Barr says. He says on the scene whether or not he knew it was reported stolen two days or we don't have that. Those facts aren't in the record. But it's in the record that on the scene prior to removal, prior to the determination that Allen brought it to Barr's attention, she stole this from me. I did not give her ownership of this motorcycle. That is my motorcycle. His problem was it was pre-signed, of course. His problem was when he signed four or five blank titles. To avoid a state, I know how that was working. This basket had him sign a will that left everything to her, not his children, and signed all these over. He signed a lot of stuff. When he found that out, that's when he confronted her that started this fight, and that's when he discovered that she took this title. And did all this while he was sick, apparently, huh? He was heavily drinking and was sick at that time. Nice. But as the court noted, we believe under Johnson v. Jones, the district court's reliance on denying the summary judgment on qualified immunity was stemmed on disputed material facts regarding ownership of the vehicle. And they found a trier fact could find that Mr. Allen was a proper owner. Therefore, Barr did violate his constitutional rights when he worked with Ms. Baskett to allow her to take this motorcycle that he subsequently bought less than two weeks later. I guess it's lucky he wasn't driving the motorcycle. I'm sorry? I think it's lucky he wasn't driving the motorcycle, based on his whatever habits. At that time, yeah, he was not driving at that time. So you're placing a very high burden on the sergeant, though, to wade into this domestic dispute and make all of these factual determinations. And qualified immunity exists unless the person is just way off base. We're not trying to put on Barr that he has to make these decisions. Once it comes that there's a dispute of property, that he needs to know that there's dispute of property, he can't make the decision at that time. He needs to left for the court. This is a civil matter. He went beyond his authority, and he determined, hey, you get it, even though there's this dispute. I'm cutting right to the chase. You're the proper owner, and he did that as a police officer. He said, you know, you can't stop her, and Alan brought that. He'd be arrested if he stopped her. So we're not saying that police are supposed to go out in the scene and enforce civil judgments. They shouldn't. And I know that was the concern in the Zappa case, that police shouldn't be out there being collection agencies for private companies. Once there's a dispute and there's evidence on both sides, it's not for the police officer to make that decision to favor one side over the other. And if you look at the facts with this case, you know, there's reasons why he did the way he did, in our opinion. And that's why we ask that this court, you know, affirm the district court's denial of summary judgment and qualifying immunity. Okay. Thank you very much. Anything further, Mr. Rahn? I believe the red light came on, so unless Your Honors have any other questions, I will rest. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.